IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERICA A. SERINE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARSHALL, DENNEHEY, WARNER, | : | |
| COLEMAN & GOGGIN, and | : | |
| CHRISTOPHER E. DOUGHERTY, ESQ., | : | |
|     Defendants. | : | No. 14-4868 |
| | : | |

### MEMORANDUM

**Schiller, J.**                                                                                     February 25, 2015

      Erica Serine sued her former employer, alleging a failure to reasonably accommodate a disability in violation of the Americans with Disabilities Act ("ADA") (Count I) and the Pennsylvania Human Rights Act ("PHRA") (Count II), unlawful termination in violation of the ADA (Count III) and the PHRA (Count IV), and intentional infliction of emotional distress (Count V). Plaintiff brings Counts I through IV only against Defendant law firm Marshall, Dennehy, Warner, Coleman & Goggin ("Marshall Dennehey"). She brings Count V against both Defendants.

      Defendants moved to dismiss all counts. For the following reasons, the Court denies Defendants' motion to dismiss Counts I, II, III, and IV. The Court grants Defendants' motion to dismiss Count V and dismisses Defendant Christopher E. Dougherty from the case.

### I.    BACKGROUND

      Serine is an attorney licensed in the Commonwealth of Pennsylvania. (Compl. ¶ 1.) From July 2010 to January 2013, she was an employee of Marshall Dennehey. (*Id.* ¶¶ 19, 107.)

Marshall Dennehy has eight offices in Pennsylvania, including Philadelphia, Moosic, King of Prussia, and Doylestown, as well as offices in other states, including in Cherry Hill, New Jersey, and Wilmington, Delaware. (*Id.* ¶ 7.)

Marshall Dennehy hired Serine as an associate attorney in July 2010. (*Id.* ¶ 19.) Her immediate supervisor was Eric A. Fitzgerald, the chairman of her practice group. (*Id.* ¶¶ 21-22.) Both Serine and Fitzgerald were based in Marshall Dennehy's Moosic office, though Fitzgerald occasionally worked from the Philadelphia office. (*Id.* ¶¶ 19, 23.) Serine received favorable performance reviews throughout her tenure at Marshall Dennehy. (*Id.* ¶¶ 26-27.)

In June 2012, Plaintiff requested a transfer to Marshall Dennehy's Philadelphia or Cherry Hill office, as she required little face-to-face supervision and her family preferred living in the Philadelphia area. (*Id.* ¶¶ 28, 36-38.) Fitzgerald discussed the request with Dougherty, a member of the firm's Executive Committee, and later advised Serine that she would be allowed to transfer to the Philadelphia office as soon as she secured a residence in the area. (*Id.* ¶¶ 39-40, 43.) Serine and her family moved to the Philadelphia area on September 21, 2012. (*Id.* ¶ 44.) She worked from home during the week of September 24, 2012, and then reported to Marshall Dennehy's office at 2000 Market Street on October 1, 2012. (*Id.*)

When Serine arrived at Marshall Dennehy's Philadelphia office, she experienced anxiety, beginning with her elevator ride to the twenty-fourth floor and continuing throughout the workday. (*Id.* ¶¶ 46-48.) She was unable to sleep or eat and obsessively researched evacuation plans for high building floors. (*Id.* ¶¶ 50, 53.) She experienced extreme nervousness at work, particularly while riding the elevator or while away from a window. (*Id.* ¶¶ 49, 57.) Although her symptoms ranged widely, Serine generally refers to her condition as "claustrophobia." (*Id.* ¶¶ 3, 60.) As a result, she left work early on October 2, 3, and 4, and worked from home on October 5

and 8. (*Id.* ¶¶ 51, 54.) On October 9, Serine advised Fitzgerald and the Marshall Dennehy Director of Human Resources that she could not return to the Philadelphia office due to her symptoms. (*Id.* ¶ 59.) Fitzgerald allowed her to work from home while she sought treatment with a psychologist. (*Id.* ¶¶ 61-64.)

Approximately two weeks later, Serine met with Fitzgerald and Dougherty to discuss her situation further. (*Id.* ¶ 65.) Dougherty questioned the sufficiency of her medical documentation and advised her that there was no place for her in the firm other than in the Philadelphia or Scranton offices. (*Id.* ¶¶ 68-69.) Dougherty denied her request to work from the King of Prussia, Doylestown, or Cherry Hill offices, citing the long commute, an apparent need to have face-to-face supervision by Fitzgerald, and her need to take the New Jersey bar examination. (*Id.* ¶¶ 71-79.) However, Dougherty permitted Serine to work from home for the next three months. (*Id.* ¶ 80.)

In December 2012, Fitzgerald gave Serine a highly favorable performance review and a $5,000 raise, noting that her work performance had not suffered as a result of her health issues. (*Id.* ¶¶ 83-86.) When she once again requested a transfer to King of Prussia, Doylestown, or Cherry Hill, Fitzgerald advised her that she would need to return to the Philadelphia or Moosic office in order to remain employed by Marshall Dennehy. (*Id.* ¶ 88.)

On January 4, 2013, Fitzgerald advised Serine that Marshall Dennehy would permit her to work from home until February 1, 2013, at which point her employment would be terminated. (*Id.* ¶ 93.) Marshall Dennehy offered to continue her salary until March 1, 2013, contingent on Serine releasing the firm from liability stemming from the termination of her employment. (*Id.* ¶¶ 93-94.) She rejected the firm's offer. (*Id.* ¶ 95.) Following several allegedly inaccurate and contradictory written correspondences, Fitzgerald advised Serine in person that she would be

3

terminated at the close of business on January 23, 2013, with her salary continuing until February 1, 2013. (*Id.* ¶¶ 95-106.)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit has established a two-part analysis of a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id.*

### III. DISCUSSION

#### A. ADA and PHRA Claims

To survive a motion to dismiss, Plaintiff must establish a prima facie case of discrimination under the ADA and PHRA. Pennsylvania courts generally interpret the PHRA in accordance with the ADA. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002). This Court therefore analyzes Plaintiff's ADA and PHRA claims together.

As a threshold matter, Serine must allege disparate treatment as follows: (1) she is a disabled person, as defined by the ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation by Defendants; and (3) she has suffered an adverse employment decision as a result of that disability. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). First, Serine alleges that her claustrophobia is a "mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). For purposes of the motion to dismiss, Defendants concede that she has alleged a disability under the ADA and the PHRA. (Mot. to Dismiss at 9, 13.) Second, Defendants also concede for

purposes of this motion that Serine was qualified for her position at Marshall Dennehy. Finally, Serine alleges two adverse employment decisions: failure to reasonably accommodate her disability, and unlawful termination. Marshall Dennehy argues that they made a good faith effort to reasonably accommodate her, and therefore neither violated the ADA nor unlawfully terminated her when she failed to accept the firm's good faith negotiations.

### 1. Failure to Accommodate

"Discrimination under the ADA . . . includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To allege an adverse employment action through a failure to accommodate, Serine must allege: (1) Marshall Dennehy knew about her disability; (2) she requested accommodations or assistance for her disability; (3) Marshall Dennehy did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for Marshall Dennehy's lack of good faith. *Id*. at 319-20.

Here, Serine has properly alleged all four of the required elements. First, Marshall Dennehy became aware of her disability when she informed Fitzgerald and the Director of Human Resources of her symptoms on October 9, 2012. Second, she asked to work from home or to transfer offices on many occasions. Third, she alleges that Marshall Dennehy and its representatives summarily denied her requests for accommodation. Finally, she alleges that she could have continued her employment at Marshall Dennehy but for the firm's failure to provide an accommodation. Marshall Dennehy argues at length that the firm complied with the ADA's reasonable accommodation provision by engaging in an "interactive process" with her. *See id*. at 311. However, Marshall Dennehy's argument relies on numerous issues of material fact that may

not be determined at the pleading stage. Consequently, Serine has pled a prima facie case of failure to accommodate her disability under the ADA and the PHRA.

2. *Unlawful Termination*

Serine need only allege a causal connection between her disability and her termination in order to survive a motion to dismiss. *Fleck v. Wilmac Corp.*, Civ. A. No. 10-5562, 2012 WL 1033472, at *11 (E.D. Pa. 2012). Serine alleges that despite overwhelmingly positive performance reviews, Marshall Dennehy terminated her employment due to her inability to work at the Philadelphia or Moosic offices. Accepting the well-pleaded facts of the complaint as true, Plaintiff has sufficiently alleged an adverse employment action as a result of her disability.

**B. Intentional Infliction of Emotional Distress**

Under Pennsylvania law, the tort of intentional infliction of emotional distress ("IIED") contains four elements: (1) extreme and outrageous conduct, (2) performed intentionally or recklessly, (3) causing emotional distress, (4) which is severe. *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)). The Court may decide at the pleading stage "whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000). Conduct is outrageous as a matter of law only where such conduct would be "utterly intolerable in a civilized community," or "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. 1996) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Conduct in the employment context rarely is sufficiently extreme and outrageous to support a claim of IIED. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). While loss of employment often causes severe hardship, it is a common event and does not provide a basis for recovery for IIED. *Id.* In this case, while Serine undoubtedly perceived Defendants' alleged failure to provide reasonable accommodation and later termination of her employment as hurtful and inconsiderate, Defendants' conduct was not so atrocious or appalling as to be considered "extreme and outrageous." *See Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 398 (E.D. Pa. 2011) (concluding that the defendant's failure to provide the plaintiff with medical leave and benefits, and its subsequent termination of the plaintiff, was not extreme and outrageous conduct). Therefore, Serine has failed to state a claim for intentional infliction of emotional distress.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion to Dismiss. An Order consistent with this Memorandum will be docketed separately.